This decision and the one we're going to argue next cannot be viewed as anything other than rulemaking by the Veterans Court involving what is required for the DCA notice in the increased ratings plan. The problem with rulemaking in this particular case, and Schultz will discuss in a moment, is that the VA already engaged in rulemaking to implement the DCA. And this court already addressed both an APA facial challenge and a merits challenge. The agency's rulemaking in implementing the DCA. So we don't get to do it all. We can't now sit here and we can screw what the statute required in terms of notice? Well, that would appear to violate this court's prohibition against the panel, the rule in the prior panel. Counsel, isn't this a different case? I mean, this is a case involving an increased rating, not an original claim. Certainly the agency has a lot more information in an increased rating situation than they do in an original claim. Would that give us the ability to consider in this different circumstance? In the PVA case, the agency prescribed regulations that apply to all claims. And at that time knew that an increased rating claim was different from a claim for, say, service connection. They decided not to require more specific notice for an increased ratings claim than it would in any other claim. So the issue has been considered by the agency. Well, can we go back? Can we start with what we, can we all agree on what the CADC requires here, at least in terms of the codes? Because it seems to me there's arguably some exaggeration or some lack of clarity. It seems to me that a fair reading of the CADC, in particular the second opinion, is with respect to increased ratings. You talk about the first code, the assigned code. And the only additional requirement is to deal with codes that are cross-referenced in that assigned code. Are you reading it more broadly than that? Because you argue it will require pre-adjudication and all of this lack of clarity and all of this. It seems to me at least it's confined to certain codes that we can specify that we can all agree are the relevant codes. In Schultz, I think it does go beyond the cross-reference codes to indicate that these other potentially related conditions of the need should be considered as they were actually considered. This kind of gets to the heart of the problem. What we want the court to take away from this is to recognize what the purpose of the notice is and the context of the notice. The notice occurs at the outset of the claims administration or the claims review process. And when the notice is issued in response to a claim, and in this case a claim for an increased rating. Now, the claim for an increased rating is to pressure the adjudicator on the facturing, feeling that there's some reason he should be entitled to an increased benefit. And that reason is because it's almost always, if not always, because his condition has gotten worse. But the problem is that there is reliance on the codes to establish the rating that might apply. And the codes provide cross-referencing that might not be evident from just a worsening of the condition. The question, though, is, is it proper to require the VA to put that type of detailed and arguably confusing information in a VCA notice? Or, like in these cases, is it more appropriate for the VA to be developing this type of information as part of an assistance provision? So what's the point of asking the veteran to come up with worsening information? I mean, in this particular case, as I understand it, the kidney disease, they asked him for a worsening of the symptoms with respect to the kidney disease. But because he had maxed out on the code, that's not going to get him an increased disability rating. And he has to show the worsening of the symptoms with respect to any of the cross-reference aspects, right? So why waste his time? And if you're right that this is only the preliminary step and we're going to get further information later, then why waste his time asking for worsening conditions of his kidney condition? The reason the VCA notice is issued is in response to the claim. So in an increased rating situation, the claimant instigates the whole process. He's come before the VA for a reason. He's not interested in some sort of attempt to increase his rating without any kind of disability basis. He said, something is wrong with me. I'm not feeling as good as I did yesterday. So I go to the VA and say, my condition has gotten worse. Perhaps it's gotten worse because his symptoms have increased. Perhaps he had a medical examination in which the doctor indicated that something is wrong here. You might have a case for an increased claim. And so that's what prompts him to go to the VA and get the claim. And so what the VA does in trying to provide... But when the notice here says, must show that your service-connected condition has gotten worse, were they referring to his condition with respect to kidney problems? The condition for which he had been rated. But he can't get any more money out of it. But this is the thing. This is why we need to deal with the... It's not a one-time communication that takes place between the VA and the claimant. In Wilson, this court went through in great detail and explained that the whole process is designed to foster communication. And so, like what happened in this case, there could be no debate here that, for Mr. Vasquez-Flores, the hypertension angle was identified thoroughly, reviewed, evidence was gathered, and it was determined that there was no merit to an increased rating based upon the hypertension theory. Why? Because the VA did its job in developing the case. And the same thing with Mr. Schultz with respect to the knee injuries. The various types of other knee issues were thoroughly developed by medical professionals who provided the medical examinations and the VA ratings folks who reviewed them. All of that stuff was accomplished as part of the duty to assist. What's your view on the 2008 statutory changes? Is there any update on the status of that administration and process of development? There's been no attempt to issue rulemaking. There's been no rulemaking, no notice of rulemaking with respect to that. Whether or not it's related to this case, it may be. But as far as I know, there's been no attempt to... Well, it speaks, does it not? The statutory change speaks to precisely what we're talking about here. For example, you note that our precedent under the regulations doesn't draw a distinction between the notice and the various types of claims. But doesn't the new statute call for precisely that kind of differentiation? But we're not here reviewing that new statute. We're reviewing the old statute. And in fact, if you think about it, if the Congress felt that there was some need to create a requirement for distinctions between the notices, that would suggest that there isn't one now and that the VA's regulations were properly implementing the statute that existed in 2000. Well, that's a little confusing simply because the committee report does reference the Vasquez case. You know, the committee report, setting aside the comments we made about how accurate that is with respect to the committee. Frankly, I think... Yeah, well, on those comments, I mean, what is your suggestion that committee staffers... Oh, my God, we'll shock committee staffers and lay a committee report. The comment... I want to just address what we consider to be an internal inconsistency with respect to that, where the committee staffer premises, or the committee, if you will, or whoever, premises the argument on overly lengthy and complicated notices, and then suggests that we should follow the lead of Vasquez-Flores in implementing new regulations, which, as we indicate in our group reviews at page 21 and 22, are going to result in overly complicated and lengthy notices. It's just the kind of thing, though, that we need to avoid at the outset of the claim development process. And the thing that's absent from the Veterans Court's decision in this case are those kinds of considerations that the agency generally and always makes when implementing regulations, and that this Court takes into account when applying Chevron deference or otherwise reviewing the regulations in an APA setting, like this Court did in PBA, and like this Court did in this case. Part of the argument, at least, is this is going to require wild speculation at the threshold level as to what kind of potential this claim would have to affect other codes, et cetera. And it seems to me that that's an exaggerated concern. There are two levels, as you indicated earlier. The cross-reference codes aren't going to involve the wild speculation, but the potentially related or potentially applicable situations that arise, especially when you look at the knee issues with respect to Mr. Schultz, those are better off being made by medical professionals. No, but around the Vasquez case, not. So you agree, don't you, that what the CABC required here in terms of notice for Mr. Vasquez does not require some sort of unlimited investigation? I would agree that a fair reading of the decision and the reconsideration decision indicates that when pointed out, the Veterans Court appears to take a few steps back in the reconsideration decision with respect to the second prong of things outside what is cross-referenced. And so to the extent that's viewed as the holding, there is some suggestion by the Veterans Court that they realize maybe they overplayed their hand. But then again, we have Schultz, which then does it, and that's the danger. But we're really overlooking in this type of detailed discussion, which is fine. But is it appropriate in the first place for the Veterans Court to step in and try to interpret, well, not interpret, but promulgate a rule as to what is required for increased rating notices when the VA already did that? Like we said, absent from the decision is any of the characteristics that you normally find when you're reviewing a rule. Counsel, can I ask you a quick question about 1155, Section 1155? If I understand correctly, your argument is under the interpretation of 1155 with regard to notice. The only notice that needs to be given is related to... Employability. Employability, right. So you need to tell a Veteran to give evidence about how his condition has worsened related to his employability, his ability to perform his job functions, as opposed to daily life. That's what the whole statutory and regulatory structure is based upon, is the effect upon employment. I understand your argument. But the problem I have is that you don't address the fact that the notice in this case unquestionably doesn't provide that level of detail. It just says that your service-connected condition has gotten worse. You don't actually inform the Veteran that he needs to show it's gotten worse relative to his employability, so you don't even meet, in this case, arguably, even vaguely, the very standard you're advocating. Do you agree with that? I think that the concern is the extra requirement, not so much... The VA would prefer that they get all the information that they could possibly get, and so by putting a limitating requirement in the notice, they might not get all that information, and so... Okay, I'm not hearing an answer to my question, though, and I want to get one. Yeah. Just asking him to show stuff that shows it, quote, got worse doesn't direct or give notice to the Veteran that he needs to show it got worse in terms of its impact on his employability. Do you agree with that? Certainly that not... Yes, certainly that not... But there's a reason for that. Again, we're in a paternalistic system. The VA wants to encourage the Veteran to provide the information that he has, and so the VA wants to sit back and say, at the end of the day, our test here is on employability. It's not affect the day-to-day life. But got worse isn't enough, right? Because got worse could mean the x-ray shows my arthritis is slightly worse, but that doesn't necessarily give you information on it, or give me notice that I need to provide you information that shows it got worse in a way that affects my employability. So the notice you provided seems to me woefully insufficient, not you personally, but the notice that was provided seems woefully insufficient, even under the very standard you articulate. I believe the Court is sort of like the Veterans Court, and I'm not saying that you're thinking the wrong thing. The questions reveal a sense that they're tying notice to these particular facts, which we've responded in that, and that, again, is part of the problem when the Veterans Court engages in a rulemaking that's better left to the agency. So the agency needs to think, well, how are we going to best approach this notice requirement for all veterans? And in this case, they determined that the best way to issue the notice that kickstarts the process, gets everything going, is to issue this generic notice, but it is tailored. It's weird to me. I mean, I don't understand this case and how you argue it, because you raised the issue, do we have to just tell him about employability, or do we also have to include the effect on his daily life? That seems to be the issue that's thrown to the CABC, but as Judge Moore points out, I don't see how that issue is even raised in this case. And it seems to me almost the government could argue, and it hasn't, but it could argue, that by asking him for evidence that a condition has gotten worse, that that includes employability and effect on daily life, right? I mean, isn't that broad enough? It may, but the concern from the government was that the focus is on employability. So by requiring this extra step of daily life, it's inconsistent with the threshold notice. You can tell us here, and you told us in a brief, the focus is on employability, but there's nothing in the notice, as Judge Moore has pointed out, that deals with employability. So the focus in the notice is arguably nothing, or is arguably everything, which would put you in suit with the CABC that it ought to include both employability and daily life. Do you understand? I understand the point, that certainly in these cases the notices don't make that distinction. Our reaction is simply to the Dutchman's Court's instruction that they have to include the other, the other being daily life, when nothing in the statute or regulations are geared to that. So there's reactions here, having a generic has gotten worse in any respect, has gotten worse in specifying that in any respect includes both daily life and employability. That seems to be where you differ with the CABC, not in terms of whether or not you include daily life, right? I think that the VA would prefer to have the notice not required to be geared toward daily life. Or employability, but to be geared towards... Well, certainly the notice that we're talking about here simply instructs the veteran, how has my condition gotten worse? That is the focus, and there are valid administrative reasons, as the agency articulated in its rulemaking, as to why the VA should not be engaged in having to overly specify notice to particular types of evidence. That was a focal point of the PVA decision. You mentioned that the VA has implemented some regulations in this area. We should defer to the implementation or defer to the Veterans Administration's interpretation of the statute. But the regulations essentially carry the statute. To what extent, in the specifics relating to this case, to what extent is deference owed under those circumstances? Well, I think the Court in Wilson has already held that deference is owed, and particularly because... In the general sense that was addressed in that case, but that was not a case involving an increased rating, and that was not a case where the specifics of the language in question, such as the evidence necessary to substantiate the claim, was under review. But as we indicated earlier, the agency determined at the rulemaking stage, which regulations apply to all types of claims, that there wasn't a basis to distinguish, there wasn't a basis to provide specificity at all. So under both this Court's decision in PVA and in Wilson, clearly what the Court is recognizing is the agency's determination about specificity generally. And in fact, the parenthetical that ends the penultimate sentence in Wilson makes that distinction, that although the notice does not need to be specific in terms of the evidence, it needs to be tailored to the type of claim, which means, for instance, you request in an increased rating claim for evidence involving the worsening of the condition, but you don't simply leave it at that and give the increased rating claim the same kind of claim notice that a person seeking service connection would get. So in this case, they were tailored. But what the Veterans Court has done in Vasquez, Fuller, and Schultz is to require that specificity with respect to evidence that this Court has already found was not accepted by the Veterans Administration in promulgating the regulations. So it is true that the regulations themselves somewhat apparent statute, but it's also true that in the notice and comment rulemaking process, where the commentators requested more specificity, the VA made it clear as to why they weren't going to provide more specificity. So as the Court indicated in Wilson, that's a sufficient basis to define what the intent of the agency was in promulgating the regulations. All right. You run well over your time, but I suspect you'll make up for some of that in the next case. But we'll reserve five minutes for rebuttal. But let's hear from the other side. May it please the Court, I'm Richard James, on behalf of Mr. Vasquez, and I've checked with my colleague and found out, much to my surprise, that it's proper to refer to Mr. Vasquez, Flores, simply as Mr. Vasquez. I didn't sense that the Court is very interested in our jurisdictional objections to this case. I'd be happy to address them now. Well, can you just answer whether or not you agree with the reading, the fair reading of the CA's opinion in this case, would limit the requirements on the VA to simply in an increased reading refer to them as signed code and to any cross-reference codes, but nothing beyond that? It requires at least that much. But there's no statement in Vasquez that takes it to the next step that both of you, Judge Frost and Judge Moore, reached. There's no statement. Do you agree that that's what the limitations are, what the CA's opinion requires? Yes. Or does it require any more? I can't answer that yes or no because they haven't addressed the disability vocational impairment part. They have required rated diagnostic code and cross-reference diagnostic codes, and they've talked in the general sense about effect on the day of life, but they haven't ever addressed the other idea, which is VA is supposed to rate vocational impairment. It's just never gotten there. And so I can't take the position for the Veterans Court that their opinion includes that idea and limits it. If that's your hearing, Mr. Vasquez's case study, you would only require that there be cross-referencing to those other codes. I would not. The VA says in its overhead policy statement 4.1, and the statute says in 1155, rate vocational impairment. It's only the VA that later comes along with the specific conditions and says, no, rate symptomatology. I'm not sure where that leaves us in terms of this case. It leaves you in a position to affirm the Veterans Court, because they did the right thing so far as they had occasion to go in that case. I know of no one who argued below that they were supposed to include in the notification some sense about vocational impairment. Okay, so that answers the question. We don't reach that issue. That issue isn't before us. We're just dealing with the reference to the diagnostic code. I'm sorry. Therefore, if it wasn't before the CAC, it would invariably mean that the only deficiency there was not the same cross-reference code. I'm sorry it took me so long to say that. Now, with respect to the daily, and you heard the kind of discussion with Judge Moore and Mr. Hockey, why isn't the veterans' reference in the notice here to a worsening of your condition sufficiently broad to include both that impact on employment and the impact on any kind of aspect of day-to-night other than employment? Well, I think it's clear from the papers in this case in the Joint Appendix that everybody took condition to mean a kidney disease. Now, I think it's reasonable for someone to come along, perhaps Mr. Hockey would take this position on the VA's behalf, that condition includes vocational impairment. I don't think so. But that seems not to have been the issue before us. I mean, the whole vocational stuff may or may not be an issue someday in some case, but it seems to me the question here was whether or not the notice was sufficient to put your client on notice that he has to show an impact not just on his employability but on his daily life. That's what the CAC said. And my question is why isn't asking him to show that it's gotten worse sufficient to cover both employability and daily life? Because when Mr. Vasquez came and testified before the regional office, Mr. Vasquez told the regional office what he as an ordinary person took that to mean, saying I'm passing more stones, they hurt worse, the pain is excruciating, and this stuff is flowing away. He said my condition has gotten worse. Counsel, I guess I understand your very fact-based answer, and that's good. I kind of thought your response to Judge Post would have been the Veterans Court also could have done something very broad and said give us everything you have related to your medical condition. But it's exactly the specificity that is necessary to put the veteran on notice, and so gotten worse is so general that the veteran in your specific case by the evidence you just gave and veterans in general wouldn't necessarily know and be on notice as to the particulars. That's exactly right. If you look at the other diagnostic codes that were cross-referenced, 4.115A, they include scientific test results and they also include reports that a claimant would make about his subjective condition, generalized poor health, lethargy, weakness, weight loss, limitation of exertion. Had the gentleman been informed, remember he's unrepresented at this stage, had he been informed he could have tailored his testimony to address those questions. But it seems to me the problem with this statement is not on the gotten worse, whether that covers daily or employability, but on the fact that it's just geared specifically to this particular diagnostic code and not to others. For example, if they had listed all of the cross-reference codes, including hypertension, and said show us how your condition has gotten worse with respect to any of these codes, that would be sufficient, would it not, to cover both the impact on daily life and employability? I don't want to take a position on the daily life question or on the employability question, but it would have been sufficient. Well, that's the issue before us. You've got to take a position. That's an issue before us on appeal. Let me see if this does it. It wouldn't have satisfied the test that the Veterans Court tracked. So it's not the gotten worse, it's really your complaint is with the limitation of the diagnostic code. No. Can I tell you how gotten worse seems to have gotten, excuse me. If it said the gotten worse, show us how any of these conditions related to the cross-reference code, including hypertension and all this other stuff, show us how your condition has gotten worse with respect to all of those codes, would that be adequate? Absolutely. It would. To satisfy the Veterans Court. Can I comment for a second on how daily life seems to have gotten into this? If you look at the VA's opening brief on page 1 and also at page 46, when the VA stated the issue at the very outset of its opening brief, it stated the issue as whether or not the VA, quote, must consider daily life, apparently mistaking the Veterans Court's decision as requiring that the VA start doing something that the VA did not believe 1155 required it to do. But the Veterans Court never said that. The Veterans Court said tell the claimant that he can bring this daily life stuff in if he wants to. We contend in our brief that perhaps they were motivated by the possibility that that would lead to the discovery of additional relevant evidence that would bear on the VA's specific criteria. I mean, the problem I'm frankly having with this case is Mr. Hoppe's, or the government's argument with respect to Chevron documents and our opinion in Wilson. And given that until this 2008 statute there was no differentiation between the different types of claims, I have a hard time frankly getting by what our precedent said and our deference to regulations in terms of upholding what appears to be a real change from what exists currently. We don't agree with that. First of all, we don't think that the VA ever interpreted anything having to do with claims for increase. But if you look, please, at the VA's- We don't agree that the statute differentiates. So when their notices are for claims, that includes all claims? You're saying that Wilson and the Veterans Regs only applied to claims other than increased disability? Yes, they addressed the other kind, the third kind of claim, which is claims to reopen. That's addressed in its rulemaking in the Federal Register both at the beginning, I think, and certainly at the end when they promulgated the final rule. But there's no statement in the rulemaking announcements having to do with claims for increase. I don't think that that's what the question is directed to. We addressed the meaning of the statute 5103 in Wilson, and we made a ruling that applied to the notice necessary when a claim is filed. And there's no distinction at that time in the statute of initial claims or claims for increased disability, ratings, or any other kind of claim. Why are we not bound to that? Well, I think there are two reasons. First of all, Wilson is distinguishable in its facts because the claim in Wilson was an original claim. It wasn't a claim for increased or a claim for reopening. But the better statement is that the Wilson opinion was written with craftsmanship. It says two times, generic notice, but tailored to the particular type of claim. And the closing statement is the last sentence of the opinion. I would read that to be the decrical paragraph at 1062. The earlier statement is at 1059. So the question in this case, if you want to reach the merits, boils down to which phrase in Wilson has priority. The VA contends that generic has priority, and it means that the VA has a license to press two keys on a word processor and comply with the VCA, a notice requirement, in every kind of claim. We say, no, the court meant something when it said tailored to the type of claim. And if you look in the opinion below, in Mr. Vasquez's case, you see that the veterans' court went back to its own precedent, which you might find just recent, on cases involving claims other than claims for increase. Can we go back to Wilson? Please. In Wilson, the last sentence, the last two sentences in Wilson, says this notice may be generic in the sense that we do not identify evidence specific to the individual claimant's case, though it necessarily must be tailored to the specific nature of the veteran's claim. Should I do something? You can answer my question. That's what you can do. You mentioned the last reference in Wilson, and I'm looking at the last reference in Wilson, and I guess I don't see how that helps you, because I read it as saying quite specifically that you don't have to identify evidence specific to the individual claimant's case. We didn't ask, excuse me, the veterans' court didn't ask the VA to identify evidence, and that's what distinguishes this case from the prior precedent on VCA notifications. But in requiring this, I thought we agreed at the outset that the VA list or identify the particular diagnostic codes that are cross-referenced in the aside code. Yes. Don't you consider that evidence identifying, if you refer to the evidence necessary for those, that's evidence specific to his claim? No. There's a difference between the evidence and the criteria, and Wilson happened to be a very good case because in Wilson, the veteran came to the Federal Circuit and said, listen, you should make them tell us when we file an original claim what's missing. What is it that we need to give you evidence? What evidence do we need to give you that you haven't already got? And in that case, the VA argued, no, can't do that because it requires us to pre-adjudicate the claim, meaning paw through the evidence. Mr. Vest, guess a situation doesn't require anything having to do with evidence. We just wanted to know what are the criteria. Here's an analogy. Playing poker with the VA. The VA deals out five cards face down. It looks up at the veteran and says, do you want to add anything? The veteran has no idea what's in the five-card stack, has no idea what they want from him, says no. The VA looks at the cards like this, puts them back down, and says, you lose. The veteran says, wait a minute, isn't there a rule book here? And the VA says, oh, yeah, we've got it. It's right here. Well, the problem I have with your poker analogy, well, among the problems I have with your poker analogy, is it's quite clear that Mr. Huffey's argument is right, is it not, that this is, it's not you lose. This isn't the end of the game and everybody goes home. This is just the preliminary step in the game. And so it's not don't turn over the cards you lose. It's let's go on to the next step where we all sit down and talk about what's under the cards. And that's the way the VA system works. What next step? Maybe it's a little more like Texas Hold'em. The flop goes and the cards go one at a time and the veteran ultimately gets to see all of them before the game is over. You mean, I'm sure, in the notice of disagreement, statement of the case, supplemental statement of the case, BVA appeal process. But if the you lose statement sticks, what's the controversy really at the bottom of the day is effective date. The implied claim in this case for an increase goes back to 1994. So if the VA was correct when it most recently said to the veteran, you lose, what he loses is that benefits for a period of, oh, 14 years. No, I think the point we were referencing was that it hasn't adjudicated the case that this first step when it gives notice and it gets back the information. That's step one in the process. And they don't, I mean, he won't lose. If he ultimately wins, if he gets his medical exam, if there's further evidence requested, if he wins, he gets his back date. I'm out of time. May I give you one more sentence? Please go ahead. Why does the veteran have to stay in the room? Why can't they tell him up front what the criteria are for his claim and let it go on? All right. Thank you very much. Mr. Hockney, you have five minutes for your question. Thank you, Your Honor. Is there a difference between criteria and evidence, as your colleague suggested? With respect to the Wilson case. The response, I think, is the question of specificity, which was key to the agency's rulemaking and was the term used in both Paralyzed Veterans and Wilson. So when we talk about specificity, the specificity of the evidence, the criteria point out the requirements that a particular rating needs, if it's going to be 0, 30, 50, 70, 100 percent. And they do identify the degree of disability, if you will. So the evidence would be the evidence that would meet those criteria. But the problem with Vasquez-Flores' decision and Schultz' decision as well is by requiring the VA to provide that type of information, you are providing evidence or you're providing information specific to a particular claim in this claim. And so when counsel says, well, what's wrong? Why can't we just have a generic notice that contains these criteria? I suppose if you could sit down and think of all the possible permutations and create 200 or 300 or 400 generic-type notices that one notice says, well, it's these three things or these four things. But that's not at all what was envisioned when the VA implemented these regulations. The regulations, as the court has indicated in the questioning at least, and as we've always maintained, and as I believe the statute and the legislative history support, that notice is that which is delimited outside of the process. And so I think what happened in these cases is at the end of the day, where the VA did fulfill its duty to assist and did a nice job of taking into account for Mr. Vasquez-Flores' potential hypertension angle and ruled it out, and for Mr. Schultz, other potential need issues and ruled it out. And when the court reviews the board decisions, as I'm sure that you have and will again, you'll see the board sets out all of the assistance that was provided in this case, which takes place at that assistance stage, and concluded that, unfortunately for both these individuals, the evidence wasn't sufficient enough to support their claims. And then the Veterans Court picked up on that and said, look at all these things that the Department of Veterans Affairs did during the assistance stage, and sort of pushed it all to the front and said, you have to do this for all these cases, provide these kinds of specific notices for all these cases. There is a question of whether, had Mr. Vasquez-Flores been notified in greater detail of the kinds of evidence that might have been necessary for his particular claim, that perhaps the record would be different and perhaps the outcome would be different. And it does relate to effective dates. Of course, he has opportunities down the line over and over and over again because of the nature of the system to submit evidence and further evidence, etc. But the question is what evidence was in the initial record considered and whether he was provided with sufficient notice to be aware of the evidence that would have helped his case. I think what the Court is alluding to is what I think we would term opportunity to rebut. The evidence that Your Honor refers to was in the record. It was developed by the VA. It was developed by the VA doctors. They took the blood pressure readings. They're all listed in the board decision. They needed evidence to rebut. But it's evidence from the veteran's perspective. Right. And so if the veteran is dissatisfied with that, as this Court has said in other cases, and Wilson included, there are steps by which the veteran can challenge that, that don't implicate the VCA notice that's issued at the outside of the case. So the notice that's issued pursuant to 5103 and 5104, I should say, related to the reasons and basics for the initial decision provides the veteran with an opportunity to say, well, wait a minute, you have denied a potential claim related to hypertension because of these blood pressure readings, but I have these other blood pressure readings that go counter to that. And he's free and, in fact, is invited to submit that evidence at that time. And that's all part of the process. But to take all of that effort that normally takes place during this period of time where people can calmly review the evidence and develop it and all of a sudden say, by the way, that was wonderful, but you know what, you should have done it at the beginning. And if you don't do it at the beginning, it's an error, and you have to start over. And that's not going to help the agency at all. That's not what witnesses have in mind when implementing these kinds of notices. The initial notice has to be simple, has to be understood by the veteran, and has to be generic to get the process going. Mr. Vasquez-Flores had not submitted any information related to hypertension, and the RO had not considered, and the board had not considered anything about hypertension and simply directed its analysis to the evidence relating to the worsening of his kidney stones. Then it's perhaps you may have, depending on how the issue is identified, because frankly, the presumption in the hypothetical, Your Honor, is that somewhere, somebody came to the conclusion that the VA didn't do something. So the question is, what's the error? And in that case, it would be a failure in the duty to assist, not a failure in the duty to notify. Let me ask you one question before we wrap up, and that is in Wilson, the sentence we were discussing earlier connects to the last sentence in the opinion. The notice may be generic in the sense that it need not identify evidence specific to the individual claimant's case. Then it goes on to say that it necessarily must be tailored to the specific nature of the veteran's claim. What is your understanding of that? The nature of the claim distinguishes between claims for service connection, claims for an increased rating, claims for housing benefits, these kinds of things. The first part of it, need not identify evidence specific to the individual claimant's case, that's where we think Vasquez-Flores crosses the line. In requesting this diagnostic code information from Mr. Vasquez-Flores, you cannot, you cannot, so there has to be different information necessary to satisfy the notice requirement where there is a claim for an increased disability rating as compared to a claim for service connection. A claim for service connection doesn't require the higher condition has gotten worse. A claim for an increased rating does. So there's a distinction based upon the nature of the claim. Why is the veteran's court determination that in the context of a claim for an increased disability rating where a particular code has been assigned, that the notice requirement includes the cross-referencing that might be relevant to that claim? That relates to evidence that would relate to evidence specific to Mr. Vasquez-Flores' claim. In other words, not every incident is tailored to the specific nature of his claim. And so not every claim for an increased rating notice will have this list on page 21 and 22 of our blue brief of questions about enema and albuminuria and things like that. Those are specifically tailored to Mr. Vasquez-Flores' claim. Now, there may be a Mr. Jones who has a very similar symptom, and he may have the same kind of rating, but Mr. Schultz doesn't, and Mr. Hockey doesn't, and Judge Lynn doesn't. They all have their own individual claims. And so when this court in Wilson said that you need not have notice that's specific to an individual's claim, this court is saying you don't need to do these kinds of things, these kinds of particularized notice that only would apply to a Judge Lynn or a Mr. Hockey who happen to have the same claim, but not to a Judge Moore or a Judge Post who have different claims for increased ratings. But all of us, the VA said, all of us would need to just describe what power condition has gotten worse. All right. Well, we've got more time to come in the next case, so let's conclude the argument in the Vasquez-Flores case. We'll take the case under submission, and we'll now have your argument.